UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRANKLIN EMEKA UFELE,)
)
Petitioner,)
)
v.)
) Criminal No. 86-143 (RCL)
UNITED STATES OF AMERICA,)
)
Respondent.)

FILED
NOV 18 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

MEMORANDUM AND ORDER

Before the Court is petitioner's *pro se* Petition for Writ of Error Coram Nobis [1] under 28 U.S.C. § 1651(a). Petitioner seeks to vacate his 1986 conviction for making a false statement on a passport application. Upon consideration of the petition, the petitioner's supplements and amendments thereto [3] [4] [8] [9], the government's opposition [12], the defendant's traverse [13], and the entire record herein, the petition will be denied.[1]

I. BACKGROUND

Petitioner pled guilty on May 2, 1986 to making a false statement in a passport application in violation of 18 U.S.C. § 1542. In a sworn affidavit to an Immigration and Naturalization Service officer, petitioner admitted that he was born in Nigeria and entered the United States in New York City on an F-1 student visa. Petitioner further admitted that he obtained the birth certificate of a natural-born citizen, Adam Wade Owens, and used this birth certificate to apply for a United States passport. Petitioner was sentenced to four years of

---

[1] The Court finds that an evidentiary hearing is unnecessary, and counsel need not be appointed to assist the petitioner.

1

unsupervised probation on June 9, 1986, with imposition of sentence suspended. As a "condition of probation," the defendant was required to "depart this county immediately for Lagos, Nigeria." The petitioner apparently complied with this directive.

Petitioner re-entered the United States at an unspecified time in 1991, and was convicted in New Jersey state court of theft by deception in 2004 and in federal court in New York for conspiracy to commit bank fraud in 2006. The Department of Homeland Security instituted removal proceedings against the petitioner in 2008, arguing that his 1986 conviction, illegal 1991 re-entry, and 2004 theft conviction all made him eligible for deportation. During the removal proceedings, the petitioner argued that, as to the first charge, he had already been deported on that basis and could not be subject to deportation proceedings a second time. As to the second charge, he argued that he returned to the United States with a lawful visa, likely a B-1 visa, but that documentary evidence of readmission was destroyed in a fire in his apartment in New York in 1993. The Immigration Judge ("IJ") sustained the three charges against the petitioner in a May 9, 2011 order. The IJ determined that the petitioner's claim that he re-entered the United States legally was not credible, and that the petitioner was not subject to deportation in 1986, but rather was required to leave as a condition of his probation sentence. The Board of Immigration Appeals affirmed the IJ's order on September 16, 2011.

Petitioner filed the instant petition on March 10, 2011, seeking to vacate his 1986 conviction insofar as that conviction supports a charge under the Immigration and Nationality Act § 212(a)(2)(C)(i) that the petitioner made a false claim to United States citizenship for the purpose of obtaining a passport.

## II. DISCUSSION

Petitioner is not in custody but seeks to vacate his conviction for collateral reasons related to his immigration status. He therefore seeks a writ of error coram nobis under 28 U.S.C. § 1651. To ensure no undue risk to the finality of judgments, the writ's availability is limited to "extraordinary cases presenting circumstances compelling its use to achieve justice." *United States v. Denedo*, 129 S. Ct. 2213, 2220 (2009) (quotations omitted). Regardless of whether this high standard is met, petitioner's claim fails as a matter of law. Petitioner argues that his conviction is invalid under *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), because petitioner's counsel failed to inform him that pleading guilty to the false statements offense would render petitioner deportable. However, the Court determines that *Padilla* does not apply retroactively.

When the Supreme Court decides a new rule of criminal law, that rule only applies to cases not yet final at the time that the decision containing the new rule is issued, subject to limited exceptions. *Teague v. Lane*, 489 U.S. 288 (1989).[2] In contrast, if the Supreme Court

---

[2] *Teague* involved a habeas petition filed under 28 U.S.C. § 2254 by a prisoner in state court custody. *See Teague*, 489 U.S. at 293. It is unclear whether the *Teague* standard applies to other forms of collateral attack on a final conviction, such as a habeas petition filed under 28 U.S.C. § 2255 by a prisoner in federal court custody, or a petition for writ of error coram nobis such as the instant one. This issue is salient primarily because the *Teague* rule is grounded on concerns for comity and federalism absent in the context of collateral attacks in federal court on federal convictions. *See generally United States v. Chang Hong*, No. 10-6294, 2011 U.S. App. LEXIS 18034, *7-8 (10th Cir. Aug. 30, 2011) (noting debate regarding whether *Teague* applies to federal prisoners).

The D.C. Circuit has yet to rule on the latter issue. That Court in deciding whether to entertain a successive § 2255 habeas petition has analyzed the retroactivity question under the *Teague* framework. *In re Fashina*, 486 F.3d 1300 (D.C. Cir. 2007). While that case provides indication that *Teague* applies to retroactivity, even in the context of collateral attacks on federal convictions, that case did not involve whether the rule at issue was "new" for *Teague* purposes.

More to the point, the D.C. Circuit in *United States v. Ayala*, 894 F.2d 425 (1990), dealt with the availability of a writ of audita querela. In its discussion, the Court noted that the writ did not add any additional forms of relief unavailable in a § 2255 petition or a petition for a writ of coram nobis. The Court explained: "To be sure, not *all* postjudgment changes in law may be raised in a section 2255 proceeding. *See Teague v. Lane* . . . . But we have little doubt that a defendant challenging his conviction may not style his motion as a petition for a writ of *audita querela* simply to evade the Supreme Court's painstakingly formulated 'retroactivity' rules." *Id.* at 429 n.8 (emphasis in original). This logic – a federal criminal defendant cannot seek a writ of audita querela to avoid

3

does not announce a "new" rule but instead relies on an old rule, the rule does apply retroactively to collateral challenges. The *Teague* retroactivity framework involves three inquiries. First, a court "must determine when the defendant's conviction became final." *Beard v. Banks*, 542 U.S. 406, 411 (2004).[3] Second, a court "must ascertain the legal landscape as it then existed, and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule" – *i.e.*, "whether the rule is actually 'new.'" *Id.* (quotations and citations omitted). "Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity." *Id.*

Petitioner argues that the holding in *Padilla*, that failure to inform a client of the potential deportation consequences of a guilty plea can constitute ineffective assistance of counsel, was not a "new" rule for *Teague* purposes. He relies primarily on a recent decision of the Third Circuit, *United States v. Oroico*, 645 F.3d 630 (3d Cir. 2011). In *Oroico*, Judge Pollack, writing for the three-judge panel, determined that the *Padilla* rule is not "new" and therefore applies retroactively to a petition for writ of error coram nobis. The Court determined that *Padilla* was a straightforward application of the rule announced in *Strickland v. Washington*, 466 U.S. 668 (1984), and made applicable to plea decisions in *Hill v. Lockhart*, 474 U.S. 52 (1985), that a defendant's Sixth Amendment right to counsel is violated when his representation falls below an objective standard of reasonableness and causes prejudice. To the Third Circuit, the first part of the *Strickland* standard – whether counsel's performance fell outside "the range of competence demanded of attorneys in criminal cases," *Hill*, 474 U.S. at 56-57 – clearly governed the question

---

*Teague*'s retroactivity framework, to which a § 2255 petition is subject – strongly indicates that *Teague* applies to petitions for writs of coram nobis.

[3] Petitioner's June 9, 1986 conviction was rendered final once his time for taking an appeal expired, on June 19, 1986, well before the Supreme Court decided *Padilla*.

of whether failure to inform a client regarding immigration consequences can rise to the level of a constitutional deficiency. Because "*Padilla* followed from the clearly established principles of the guarantee of effective assistance of counsel . . . *Padilla* is set within the confines of *Strickland* and *Hill* . . . ." *Oriocio*, 645 F.3d at 630. Thus, the Court determined that *Padilla* did not "break new ground," but was instead "dictated" by *Strickland* and *Hill*. *Id.* at 638 (quotations and modifications omitted).

The government in *Oroico* had argued, as it does here, that both the number of lower court decisions contrary to *Padilla* and the 7-2 split among the Justices in the *Padilla* decision demonstrated that the decision was not "dictated" by prior precedent, and that the rule announced in *Padilla* was not "apparent to all reasonable jurists" at the time of conviction, *Beard*, 542 U.S. at 413. The Third Circuit disagreed. First, the *Padilla* Court stressed in its decision that the Supreme Court had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland* . . . ." *Orocio*, 645 F.3d at 638 (quoting *Padilla*, 130 S. Ct. at 1481). Further, the Third Circuit noted that many lower court decisions reaching the opposite conclusion as *Padilla* were "decided before 1995 and pre-date the professional norms that, as the *Padilla* court recognized, had long demanded that competent counsel provide advice on the removal consequences of a client's plea." *Id.* at 640. Finally, the Third Circuit noted that "the *Padilla* Court anticipated the retroactive application of its holding on collateral review" because it acknowledged arguments that the rule announced would open a floodgate of collateral attacks. *Id.* at 641 (citing *Padilla*, 130 S. Ct. at 1484-85). Ultimately, the Third Circuit determined that *Strickland* created a rule governing the sufficiency of representation that *Padilla* applied

5

faithfully in view of then-prevailing standards. *Padilla* did not change the law, and thus expressed an "old rule" that under *Teague* applied retroactively.

Although this Court recognizes the strength of the Third Circuit's rationale, the Court determines that *Padilla* does not apply retroactively, a position taken by both the Seventh and the Tenth circuits, *see United States v. Chang Hong*, No. 10-6294, 2011 U.S. App. LEXIS 18034 (10th Cir. Aug. 30, 2011); *Chadiez v. United States*, 655 F.3d 684 (7th Cir. 2011). Instead, *Padilla* represents a "new" rule because it rests on a novel analysis of the status of deportation as a consequence of conviction. The Supreme Court in *Padilla* began its analysis by noting that at least six circuit courts of appeals had taken the view that the Sixth Amendment does not require counsel to inform clients regarding the collateral consequences of a conviction, including deportation. The Court pointed out that it had yet to apply a distinction between direct and collateral consequences to the *Strickland* framework. However, it determined that it need not resolve the validity of such a distinction, because of the "unique nature of deportation." *Padilla*, 130 S. Ct. at 1481. The Court emphasized that unique nature and deportation's close ties to criminal sanctions. *See id.* at 1481-82 (surveying case law stressing the connection). Accordingly, the Court found deportation "uniquely difficult to classify as either a direct or a collateral consequence," and that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment's right to counsel." *Id.* at 1482. The special nature of deportation was crucial to the Court's determination that *Strickland* could apply to the instant case. Importantly, the Court did not abrogate the proposition that the Sixth Amendment does not apply to collateral consequences of a conviction; the Court merely overruled the notion that deportation is a collateral consequence.

The Court's conclusion in *Padilla* that *Strickland* covered advice regarding deportation rested on the insight that deportation occupies a special niche between direct and collateral consequences of conviction. The *Teague* inquiry in this case therefore is focused on the following question: did precedent existing in 1986 dictate this insight, and would all reasonable jurists reach that conclusion? The answer is, surely not. First, it is notable that the norms of professional conduct noted by the Third Circuit developed, according to that Court, in 1995 – well after the petitioner's conviction. Thus, the Third Circuit's argument that *Strickland* codified a rule, the application of which to deportation consequences became inevitable following mid-1990s changes in the objective standard of reasonable representation, is inapplicable in this case. Regardless, changes in professional conduct simply do not bear on the categorization of deportation consequences as direct or collateral.

Although the Supreme Court cited numerous precedents in favor of the proposition that deportation is unique, none provided a strong indication that deportation is neither a direct nor a collateral consequence of conviction. The most closely applicable case is *INS v. St. Cyr*, 533 U.S. 289 (2001), which determined that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 did not retroactively repeal the availability of Immigration and Nationality Act § 212(c) relief for aliens whose convictions were obtained through plea agreements.[4] *St. Cyr*, 533 U.S. at 326. There, the Court noted that aliens considering plea agreements were "acutely aware of the immigration consequences of their convictions," and that many states required trial judges to advise defendants of those potential consequences. *Id.* at 323 & n.48. But that decision too postdates the petitioner's conviction. More importantly, the

---

[4] Section 212(c) permitted permanent resident aliens who maintained a lawful unrelinquished domicile of seven consecutive years in the United States and who subsequently pled guilty to a deportable offense to seek discretionary waiver of deportation.

recognition that the possibility of deportation is a serious consideration for aliens charged with a crime does not compel the conclusion that deportation falls outside the direct/collateral consequences dichotomy. *Strickland* itself does not provide any such indication, and neither does any other pre-*Padilla* case of which this Court is aware.

The Third Circuit's reasoning would be stronger had the Supreme Court held in *Padilla* that *Strickland* could conceivably apply to *all* consequences of conviction, and that the lower courts must have been blind to the dictates of the Sixth Amendment to conclude otherwise. But this is not what *Padilla* held. The *Padilla* Court did not simply apply *Strickland* according to *Strickland*'s terms to the facts of the case and say that the *Strickland* rule on its face is applicable to all material consequences of conviction. Rather, the Court declined to repudiate the distinction between direct and collateral consequences for the purposes of ineffective of counsel claims, and placed deportation in a special category to which the Sixth Amendment could apply. This novel result is not "dictated" by *Strickland*, and it is not the case that this result should have been clear to "all reasonable jurists," *Beard*, 542 U.S. at 413. Indeed, this result is somewhat counterintuitive, since deportation falls squarely within the standard definition of a collateral consequence of conviction – a consequence that "remains beyond the control and responsibility of the district court," *Broomes v. Ashcroft*, 358 F.3d 1251, 1256-57 (10th Cir. 2004). The *Padilla* rule is therefore new, and does not automatically apply retroactively under *Teague*.

Bolstering this conclusion is the straightforward observation that many reasonable jurists disagreed with the propositions that deportation is not a collateral consequence of a conviction, and that *Strickland* could apply to a non-direct consequence of conviction. At the time the petitioner was sentenced, at least one federal court of appeals had reached a holding contrary to *Padilla*. *United States v. Campbell*, 778 F.2d 764, 769 (11th Cir. 1985). That view would

become the consensus position, which *Padilla* overturned. *See generally Padilla*, 130 S. Ct. at 1481 n.9 (collecting cases); *cf. Butler v. McKellar*, 494 U.S. 407, 415 (1990) (surveying disagreement among lower courts in determining whether a rule is "new"). The *Padilla* Court itself was split, with five Justices agreeing with the majority position that counsel has a Sixth Amendment duty to inform a defendant of potential deportation consequences, *id.* at 1487; two Justices concurring with the judgment but arguing that counsel are constitutionally ineffective only if they provide affirmative misguidance about deportation, *id.* at 1494 (Alito, J., concurring); and two Justices dissenting from the proposition that the Sixth Amendment applies to deportation consequences at all, *id.* at 1497 (Scalia, J., dissenting). *Cf. Beard*, 542 U.S. at 414-15 (discussing, in connection with retroactivity analysis, how the Justices' voted in the case creating the potentially new rule). Surely the existence of some disagreement among Justices and among lower courts cannot always dispose of the retroactively question, *see Williams v. Taylor*, 529 U.S. 362, 410 (2000). But given this legal landscape, reasonable jurists at the time of the petitioner's sentence easily could have concluded, and did conclude, that the Sixth Amendment did not apply to the immigration consequences of conviction.

Thus, although the Third Circuit is correct to observe that *Padilla* is in form an application of the standard *Strickland* test for ineffective assistance of counsel, the *Padilla* Court applied *Strickland* only after it concluded that immigration consequences are divorced from the traditional distinction between direct and collateral consequences. This conclusion, though versed in a longstanding respect for the seriousness of deportation, was sufficiently novel that it would not have been, and was not, apparent to all reasonable jurists. It is a result that *Strickland* itself does not dictate, and the *Padilla* holding must be considered "new" for retroactivity purposes.

A new criminal ruling is only retroactive in two circumstances. *Schiriro v. Summerlin*, 542 U.S. 348, 351-52 (2004). First, a new ruling is retroactive if it is substantive, *i.e.*, if it "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *Teague*, 489 U.S. at 311 (quotations omitted). Second, a new procedural ruling is retroactive if it is part of "a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding . . . without which the likelihood of an accurate conviction is *seriously* diminished." *Schriro*, 542 U.S. at 352 (quotations omitted; emphasis in original). Neither exception applies here. The *Padilla* rule does not relate to the substantive criminal law, and it affects only the advisability, not the validity, of a defendant's guilty plea. Accordingly, *Padilla* does not apply retroactively.

### III. <u>CONCLUSION</u>

The holding in *Padilla*, that failure to inform a defendant of the immigration consequences of a guilty plea can constitute a Sixth Amendment violation, announced a new criminal rule that does not apply retroactively under *Teague*. The petitioner therefore cannot invalidate his conviction on collateral review through application of *Padilla*. It is therefore hereby

**ORDERED** that petitioner's petition for writ of error coram nobis is **DENIED**.

**SO ORDERED** this 17th day of November 2011.

Royce C. Lamberth
ROYCE C. LAMBERTH
Chief Judge
United States District Court

10